NOT DESIGNATED FOR PUBLICATION

No. 116,701

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of L.B.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed June 9, 2017. Affirmed.

*Michael J. Nichols*, of Michael J. Nichols, P.A., of Kansas City, for appellant natural mother.

*Sheri L. Courtney*, assistant district attorney, and *Mark A. Dupree, Sr.*, district attorney, for appellee.

Before GARDNER, P.J., PIERRON and ATCHESON, JJ.

*Per Curiam*: B.B. (Mother), natural mother of L.B., contends that the district court erred in terminating her parental rights. Finding no basis for reversal, we affirm.

*Factual and procedural background*

While investigating a report about L.B. being truant, the Kansas Department for Children and Families (DCF) determined he had been absent from school between March 5 and March 11, 2015, without a parent's notice to the school. Over the next few days, DCF compiled troubling information about L.B.'s whereabouts and Mother's supervision of him.

On March 12, 2015, Mother reported that L.B. had run away to live with relatives in Missouri but those relatives would be returning L.B. to her the same day. Mother also reported that she was in the process of moving to Missouri but did not know the address. Mother agreed that she would meet with a DCF social worker after getting L.B. from her relatives but Mother never showed up to the appointment. Later on March 12, 2015, DCF learned that L.B. was in custody. On March 13, 2015, L.B. claimed that Mother had left him at a "dope house" where he had stayed for 4 hours before calling relatives who came to get him. He stayed with relatives for 4 days, then turned himself in to "get the runaway off his background." L.B. stated that his mother used "pot" and "meth."

On March 16, 2015, the State initiated a child in need of care case based on the DCF investigation. Mother stipulated that L.B. was a child in need of care, that she was homeless, and that L.B. had not been attending school. On May 27, 2015, the district court adjudicated L.B. a child in need of care and placed him in DCF custody. The district court found that reintegration was viable and issued a reintegration plan.

As of January 2016, however, Mother had made little progress in completing her reintegration plan. Specifically, Mother had failed to submit to urinary analyses (UA), had failed to report to her court services officer (CSO), had been charged with misdemeanor theft, and had failed to prove she had stable housing and income.

*Visitation*

While L.B. was in custody, 23 visitations were scheduled but only 19 visits occurred. Before the March 7, 2016, visit, Mother was in the lobby restraining another child of hers who was causing a disturbance. After the disturbance, Mother was asked to provide a UA sample. Instead of providing a UA sample Mother submitted tap water. Mother became very angry after being asked to submit another UA sample. Later during that visit, Mother passed out on the hallway floor. The police were called because Mother

was suspected of being under the influence of drugs. However, none of the valid samples submitted by Mother ever tested positive for illicit substances. Mother claims that she was tired because she had worked until 2 or 3 a.m. the night before the visit. Mother did complete substance abuse assessment and counseling programs.

*Employment*

Mother was unemployed when she lost custody of L.B. After some time, Mother gained employment at a night club and worked as a waitress and bartender for 6 months. Mother testified that she provided proof of income earned at the night club to her case worker one time. At the time of the termination hearing on September 14, 2016, Mother was working with a friend doing "odd-and-end jobs" such as cleaning and painting. Mother was paid $8 per hour by her friend. Mother claimed that she submitted resumes and did interviews in an attempt to find a job but had difficulty finding employment because of a child endangerment felony on her record. That felony occurred in 2009 and involved the daughter of Mother's friend. At the time of the termination hearing, Mother was not receiving any form of government assistance.

*Housing*

It is unclear where Mother lived at certain times because she was, admittedly, homeless. In January 2016, Mother was living with her sister in Overland Park. Mother then moved in with a roommate through May 2016 when the roommate kicked her out. Mother then stayed with another friend for approximately 90 days until the person who leased that residence went to jail, forcing Mother to move again. Mother then began living with her aunt for 3 or 4 days a week and spent the rest of the week with a friend. Mother claims that she attempted to find housing but was unsuccessful. At the termination hearing, Mother admitted that she had no prospects of obtaining stable

3

housing. Mother claimed that it would take 3 to 6 months for her to be able to adequately support L.B.

*Probation*

At the time of the termination hearing, Mother was on probation for misdemeanor theft. Mother had stopped reporting to her probation officer on May 11, 2016, and had failed to pay court costs as required by the terms of her probation. Mother claimed that she could not report to her probation officer because her car broke down and she could not get a ride to the probation office. At the termination hearing, officers were waiting to arrest Mother, who had already served 2 months of her 1-year sentence for misdemeanor theft, because of her probation violations.

*District court determinations*

The district court noted that Mother had been given 18 months to carry out a reasonable reintegration plan and that no facts showed she would be able to complete the reintegration plan within 3 to 6 months. The district court found it in L.B.'s best interests to remain in the custody of his grandparents who had the resources to properly care for him. Pursuant to K.S.A. 2016 Supp. 38-2269(b), the district court found Mother was unfit to be a parent and would remain unfit to be a parent for the foreseeable future. Specifically, the district court determined that the failure of KVC's reasonable efforts to rehabilitate the family, Mother's failure to carry out a reasonable reintegration plan, and Mother's lack of effort to adjust her circumstances justified a finding that Mother was an unfit parent.

*Does clear and convincing evidence show Mother is unfit to be a parent and will remain unfit for the foreseeable future?*

Mother argues that KVC did not make reasonable efforts to help her find housing. Mother argues that she made progress in dealing with her drug problems and regularly visited L.B. Mother essentially argues that her reintegration plan progress is evidence that she was likely to complete the reintegration plan within 6 months. Mother also contends that the district court prematurely terminated her parental rights because the case was open for only 18 months.

Because a parent has a fundamental liberty interest in the relationship with his or her child, the allegations of conduct that form the basis for termination of parental rights must be proved by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 758-59, 769-70, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). When this court reviews a district court's termination of parental rights, we consider "whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that [the parent's rights should be terminated]." *B.D.-Y.*, 286 Kan. at 705. *B.D.-Y.* explained that "clear and convincing evidence" requires the factfinder to believe "that the truth of the facts asserted is highly probable." 286 Kan. at 697.

We find little merit to Mother's argument that KVC did not provide reasonable assistance to help Mother find housing. Under K.S.A. 2016 Supp. 38-2269(b)(7), a district court may terminate parental rights if reasonable efforts made by KVC have failed to reintegrate the family. KVC had provided Mother with lists of locations where Mother could find housing. Mother admitted that Joseph Pagan, the KVC case manager who helped mother complete her reintegration tasks, sat down with her and called every

number on a list to help her find housing, but Mother claimed that she was given the "runaround" by potential landlords because she was homeless.

KVC also did a walkthrough of Mother's sister's home when Mother was living there and determined that the home was not adequate because L.B. would have been living in the garage. KVC also scheduled a walkthrough at Mother's subsequent residence but no one answered the door when Pagan arrived. Mother did not schedule further walkthroughs because she had not obtained a permanent residence. The facts show that KVC was actively working with Mother to help her find a permanent residence and that its assistance was reasonable.

The primary issue in this case was Mother's homelessness and her inability to find a suitable home for herself and L.B. The reintegration plan clearly required Mother to find suitable housing. Under K.S.A. 2016 Supp. 38-2269(c)(3), the district court can find a parent unfit for failing to carry out a reasonable reintegration plan. Mother admitted that she was not able to provide stable housing for L.B. Furthermore, Mother's argument that she could have provided a home for L.B. within 6 months is unrealistic because she was arrested at the conclusion of the termination hearing for having violated the terms of her probation and had 10 months remaining on her sentence. Mother did not offer any evidence to show that her circumstances were likely to change in the foreseeable future. Therefore, we find clear and convincing evidence that Mother failed to complete the reintegration plan.

Under K.S.A. 2016 Supp. 38-2269(b)(8), a district court may find a parent unfit when the parent demonstrates a lack of effort to adjust their circumstances to meet the needs of the child. Mother did attempt to find housing and testified that she was trying to find a job. The record confirms that Mother did put forth some effort to complete some tasks in the reintegration plan, such as dealing with her drug problems. But many tasks were left uncompleted. Mother submitted only one pay stub, although the plan required

6

her to submit proof of her income. Furthermore, mother failed to complete the batterer's intervention program or to deal with the legal issues concerning her probation violation. On the day of the termination hearing, Mother had still not dealt with her probation violation. Therefore, we find clear and convincing evidence to show that Mother put forth a lack of effort to adjust her circumstances to comply with the terms of her reintegration plan.

*Did the district court abuse its discretion in determining it was in L.B.'s best interests to terminate parental rights?*

Mother has not briefed why termination of her parental rights was not in L.B.'s best interests. Accordingly, we could affirm based on Mother's failure to brief this issue. "Where the appellant fails to brief an issue, that issue is waived or abandoned." *State v. Angelo*, 306 Kan. __, Syl. ¶ 2, 392 P.3d 556 (2017). Nonetheless, we briefly address this important issue.

The district court is in the best position to make findings on the best interests of the child, and its judgment will not be disturbed in the absence of an abuse of judicial discretion. See *In re Marriage of Rayman*, 273 Kan. 996, 999, 47 P.3d 413 (2002). When considering whether terminating parental rights is in the best interests of the child, the "court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2016 Supp. 38-2269(g)(1). A judicial action constitutes an abuse of discretion if the action: (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 106 (2013).

The district court considered L.B.'s emotional health when it found that permanency would benefit L.B. because he would no longer have to wonder things such as, "'Am I going to be with grandma and grandpa for a while and then go to mom? Can I

get comfortable in this school? Should I make friends, because I don't know how long I'm going to be here?'" The district court considered L.B.'s physical wellbeing when it noted that L.B.'s grandparents would be able to provide medical care for him. Furthermore, the district court noted that Mother could still be a part of L.B.'s life but as a legal matter it was in his best interests to have her parental rights terminated. Nothing in the record suggests the district court's determination that terminating Mother's parental rights was based on an error of fact or law. Instead, the record shows that L.B.'s grandparents have the resources to adequately care for him and that he would benefit from permanency.

Based on the evidence, a reasonable person would likely agree with the district court judge and determine that it was in L.B.'s best interests to have Mother's parental rights terminated. Therefore, the district court did not abuse its discretion.

Affirmed.